UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ETTA JALLOH, *et al.*,              )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      Civil Action No. 12-CV-0694 (KBJ)
                                    )
DISTRICT OF COLUMBIA,               )
            Defendant.              )
                                    )
_____ )

**OPINION AND ORDER ADOPTING MAGISTRATE'S REPORT & RECOMMENDATION AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

Plaintiff Jalloh brought this action on behalf of her minor grandson, D.B., appealing a Hearing Officer's dismissal of her administrative claim under the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs allege that D.B. was denied a free and appropriate public education in the District of Columbia Public Schools ("DCPS"), and seek reimbursement for tuition expenses incurred when D.B. was removed from DCPS and placed in a private school. Plaintiff Jalloh first brought an administrative complaint on November 17, 2011. The Hearing Officer held an administrative hearing on January 25, 2011, and issued a decision denying Plaintiffs' request on February 2, 2012. On April 30, 2012, Plaintiffs filed a complaint in this Court (ECF No. 1). On January 10, 2013, Plaintiffs filed a motion for summary judgment (ECF No. 11), and Defendant filed a cross-motion for summary judgment on February 14, 2013 (ECF No. 12). The Court referred the motions to a Magistrate Judge on May 14, 2013.

1

On August 14, 2013, Magistrate Judge Alan Kay issued a Report and Recommendation (ECF No. 19, attached hereto as Appendix A) with respect to the parties' cross motions for summary judgment. The Report and Recommendation reflected Magistrate Judge Kay's opinion that Plaintiffs' motion for summary judgment should be denied, and that Defendant's Motion for summary judgment should be granted. Report and Recommendation at 2.

The Report and Recommendation also advised the parties that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection with the Clerk of the Court within 14 days of the party's receipt of the Report and Recommendation. As of this date—over a month after the Report and Recommendation was issued—no objections have been filed. The Court has reviewed Magistrate Judge Kay's report and hereby adopts the Report and Recommendation in its entirety.

Accordingly, it is hereby

**ORDERED** that the Report and Recommendation (ECF No. 19) is **ADOPTED**; it is

**FURTHER ORDERED** that in accordance with the Report and Recommendation, Plaintiffs' motion for summary judgment is **DENIED**; and Defendant's motion for summary judgment is **GRANTED**; and it is

**FURTHER ORDERED** that the case is **DISMISSED** in its entirety.

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

DATE: September 17, 2013

# APPENDIX A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETTA JALLOH, *et al.*,<br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA,<br>　　　　　　Defendant. | Civil Action No. 12-CV-694 (KBJ-AK) |

**REPORT AND RECOMMENDATION**

　　　　Minor student D.B. and his grandmother, Etta Jalloh, ("Grandmother")[1] (collectively, "Plaintiffs"), appealed the Hearing Officer's dismissal of the Plaintiffs' due process complaint brought under the Individuals with Disabilities Education Act (IDEA). D.B. and his Grandmother alleged that the District of Columbia Public Schools ("DCPS") denied D.B. a free and appropriate public education ("FAPE") and sought reimbursement for D.B.'s private school tuition. After a due process hearing in January 2012, Hearing Officer Peter Vaden found that DCPS did not deny D.B. a FAPE and D.B. and his Grandmother were not entitled to tuition reimbursement. Hearing Officer Determination ("HOD") [9-1] at AR 23. Accordingly, Hearing Officer Vaden dismissed the Plaintiffs' claims and denied the requested relief of private school funding. *Id.* The Plaintiffs filed a Complaint [1] in this Court appealing the Hearing Officer's Determination. U.S. District Court Judge Ketanji Brown Jackson referred this case to the undersigned for full case management on May 14, 2013. Referral to Magistrate Judge [18]. The Plaintiffs filed a Motion for Summary Judgment ("Pls.' Mot.") [11] and the District of Columbia ("Defendant") filed a Cross Motion for Summary Judgment ("Def.'s Cross-Mot.") [12]. Also pending before the undersigned is the Defendant's Memorandum in Opposition to the Plaintiffs' Motion for Summary Judgment [13], the Plaintiffs' Memorandum in Opposition to the

---

[1] The Grandmother is a Plaintiff in this case. For the purposes of the due process request, Hearing Officer Vaden deemed the Grandmother "to be a 'Parent' in her capacity as an individual acting in the place of a biological parent with whom the child lives." HOD [9-1] at AR 3 n. 2 (referencing C.F.R. § 300.30(a)(4)). The undersigned likewise acknowledges the Grandmother as the "Parent" of D.B. *See* 20 U.S.C. 1401(23)(C) (listing one definition of the term "parent" for the purposes of the IDEA as "an individual acting in the place of a natural or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare").

Defendant's Cross Motion for Summary Judgment [14], the Plaintiffs' Reply to the Opposition to the Motion for Summary Judgment [15], and the Defendant's Reply to the Opposition to the Cross Motion for Summary Judgment [17]. The undersigned recommends denying the Plaintiffs' Motion for Summary Judgment and granting the Defendant's Motion for Summary Judgment.

## BACKGROUND

D.B. is a fifteen-year-old[2] student who is eligible for special education and related services "under the classification of a student with multiple disabilities, including specific learning disability." Pls.' Mot [11] at 4. D.B. has diagnoses of Attention Deficit Hyperactivity Disorder, Combined Type, Emotional Disturbance, and Disruptive Behavior Disorder Not Otherwise Specified. Cognitive Evaluation [9-1] at AR 28, 32; Clinical Psychological Exam [9-1] at AR 47-48. Evaluators recommended that he be placed in an individualized program with a high teacher-to-student ratio in a special school with access to the latest technology available, including computerized specialized remedial software and word processing equipment. Cognitive Evaluation [9-1] at AR 34-35; Education Evaluation Report [9-2] at AR 65. D.B. resides in the District of Columbia and his grandmother, Etta Jalloh, brought this suit on his behalf and in her own right. Compl. [1] at ¶¶ 3-4.

From 2005 to August 2011, D.B. attended Rock Creek Academy ("RCA"). HOD [9]1] at AR 6. On July 7, 2011, Ms. Nicole Garcia, in her role as a DCPS Progress Monitor, sent the Grandmother a Letter of Invitation ("LOI") by regular mail and certified mail informing her of an IEP Team meeting scheduled for July 28, 2011. Records of Communications in EasyIEP Program ("EasyIEP") [9-2] at AR 133; Testimony of Nicole Garcia [10-1] at AR 659. The LOI sent on July 7, 2011, noted that a representative from the Spectrum program at Coolidge High School ("Spectrum") was expected to attend the IEP meeting on July 28, 2011. LOI [9-2] at AR 97. Ms. Garcia also attempted to reach the Grandmother by phone to inform her of the date and time of the IEP meeting but was unable to reach her or leave her a message. EasyIEP [9-3] at AR 132. On July 27, 2011, a DCPS representative went to Plaintiffs' home and left a copy of the LOI at Plaintiffs' door after finding that Plaintiffs were not at home. *Id.* at AR 134. On July 28, 2011, Ms. Garcia called the Grandmother to see if she was able to attend the meeting scheduled

---

[2] D.B. was age fifteen as of 1/10/13 when Plaintiffs' Motion for Summary Judgment was filed.

for that day but the Grandmother did not answer. *Id.* at AR 135.  Later that day, DCPS held the IEP Team meeting without the Grandmother present.  IEP [9-3] at AR 104.  RCA representatives refused to participate in the July 28, 2011, IEP meeting.  Testimony of Nicole Garcia [10-1] at AR 662.  RCA had objected to DCPS holding LRE meetings at the DCPS central office numerous times, because it was too far away for RCA staff members to attend and that telephone participation had proven ineffective.  E-mail from Teri Talpsep [9-2] at AR 92; E-mail from Giselle Cohen [9-2] at AR 93.  Furthermore, RCA declined to attend the IEP meeting because the Grandmother was absent.  Testimony of Nicole Garcia [10-1] at AR 706.

The IEP developed at the meeting established D.B.'s placement in a full-time special education setting with 25.5 hours per week of specialized instruction, 1 hour per week of behavioral support services, and 1 hour per week of speech and language services.  IEP [9-3] at AR 110.  This IEP was the same as D.B.'s previous IEP in the amount and type of services.  Testimony of Nicole Garcia [10-1] at AR 684.  Ms. Garcia, DCPS representative Jade Bryant, and a Spectrum representative attended the IEP meeting in person while D.B.'s special education teacher, a DCPS case manager, a DCPS psychologist, and a speech language pathologist participated by phone.  IEP [9-3] at AR 104.  At the IEP Team meeting, the Team decided that D.B. should attend the Spectrum program for the 2011-2012 school year.  Meeting Notes [9-3] at AR 114.  RCA closed permanently on August 8, 2011.  HOD [9-1] at AR 17.

Spectrum contracted with DCPS to provide special education services for students who have or are at risk for Emotional Disturbance and who receive special education services. Spectrum Co-Location Classrooms Brochure [9-7] at AR 317.  Spectrum classes included direct instruction from teachers as well as instruction through a computer program, referred to as the "A+ Program."  Testimony of Nicole Garcia [10-1] at AR 735.  Each student had a personal workstation with a computer and other learning materials and used technology to follow a personal academic path and remain motivated.  Spectrum Co-Location Classrooms Brochure [9-7] at AR 317.  The A+ Program allowed students to earn Carnegie credits required for graduation.  Testimony of Nicole Garcia [10-1] at AR 665.

When D.B. attended Spectrum, he was one of six students in his classroom with four teachers and a behavior specialist.  *Id.* at AR 488-89.  At Spectrum, students remained in the same classroom for the full school day with teacher rotating for different subjects.  *Id.* at AR 497. Spectrum gave students in special education the option to participate in extra-curricular activities

with general education students from Coolidge High School.  Testimony of Nicole Garcia [10-1] at AR 684.  Although the students in special education did not have lunch with the students in general education, all students entered the school through the same entrance with metal detectors.  Testimony of Nicole Garcia [10-1] at AR 683; Testimony of Cordester Brown [10-1] at AR 441-442.  Spectrum also utilized a leveled behavior system, through which special education students who exhibit good classroom behavior graduate from one level to the next and are eventually transitioned into the general education high school after surpassing level five.  Testimony of Chithalina Khanchalern [10-1] at AR 529.  A student who reaches level five may be retained in full-time special education classes if the IEP team decides that the student is not yet ready to transition into a general education setting.  Testimony of Nicole Garcia [10-1] at AR at 729.

The Grandmother received a Prior Written Notice ("PWN") stating that Spectrum could implement D.B.'s IEP and provide him with a FAPE.  PWN [9-3] at AR 102.  A DCPS representative called the Grandmother and left a voicemail message on August 15, 2011, notifying her of an open house being held at Spectrum.  IEP [9-3] at AR 136.  D.B's mother, Cordester Brown ("Mother"), called DCPS two days later, stating that she would attend the open house on behalf of Plaintiffs.  EasyIEP [9-3] at AR 137.  On August 18, 2011, Ms. Garcia spoke with the Grandmother and the Mother about their concerns with D.B.'s placement at Spectrum, including metro bus access and the school schedule.  EasyIEP [9-3] at AR 138.  The Mother also expressed concern about the location of the classrooms and D.B.'s interaction with general education students.  Testimony of Cordester Brown [10-1] at AR 439-40.  The Mother accompanied D.B. to Spectrum on the first day of school.  *Id.* at AR 441-442.  The Grandmother and the Mother unilaterally removed D.B. from Spectrum after the first day of school and the Mother enrolled him at a private school, New Beginning's Vocational Program ("New Beginnings").  *Id.* at 453; Testimony of Ella Jollah [10-1] at AR 401.  The Grandmother did not inform DCPS of the Mother's unilateral placement of D.B. until October 11, 2012.[3]  Fax [9-3] AR 148-152 [9-3].

The Grandmother filed an administrative due process complaint on November 17, 2011, alleging that DCPS denied D.B. a FAPE by: (1) failing to hold a LRE meeting at a mutually

---

[3] The date of the letter is August 22, 2011, *see* AR 150, but both parties agree that it was not transmitted to DCPS until October 11, 2011.  *See* date of Fax [9-3] at AR 149; DCPS Letter [9-3] at AR 148; Pls.' Mot. [11] at 5; Def.'s Opp. [12] at 7.

agreeable time and location, (2) failing to involve the Grandmother in the placement decision and holding an IEP meeting with an inadequate team, (3) failing to issue an adequate PWN, and (4) failing to provide D.B. with an appropriate placement. Pet'rs' First Am. Due Process Compl. [9-4] at AR 170-77; 180. The Grandmother requested placement and funding for D.B. at New Beginnings from October 11, 2011, through the end of the 2011-2012 school year. *Id.* at 179. Hearing Officer Vaden held an administrative hearing on January 25, 2012. HOD [9-1] at AR 3. He issued his decision on February 2, 2012, finding that DCPS failed to comply with the IDEA's procedural requirements without substantively denying D.B. a FAPE, that the PWN issued by DCPS was adequate and did not violate Plaintiffs' IDEA rights, and that Spectrum was able to implement D.B.'s IEP and was therefore an appropriate placement for D.B. HOD [9-1] at AR 14-22. Hearing Officer Vaden denied the Grandmother tuition reimbursement because D.B. received a FAPE and because Spectrum was an appropriate placement for D.B. *Id.* at AR 22-23.

On April 30, 2012, Plaintiffs filed a Complaint [1] in this Court seeking a reversal of the HOD. Plaintiffs filed a Motion for Summary Judgment [11] on January 10, 2013, arguing that Hearing Officer Vaden improperly ruled that DCPS did not substantively deny D.B. a FAPE with the IEP meeting, that DCPS had provided the Grandmother with a legally sufficient PWN, and that DCPS had provided D.B. with an appropriate placement at Spectrum. Pls.' Mot [11] at 7-15. Furthermore, Plaintiffs stated that Hearing Officer Vaden incorrectly denied tuition reimbursement. *Id* at 15-16. DCPS filed a Cross Motion for Summary Judgment [12] on February 14, 2013, arguing that Hearing Officer Vaden correctly denied tuition reimbursement because DCPS's procedural violation of IDEA did not substantively prevent DCPS from providing D.B. with a FAPE. Def.'s Cross-Mot. [12] at 14-16. Additionally, D.B.'s Mother had acted unreasonably when she unilaterally placed D.B. at New Beginnings, that Spectrum was an appropriate placement for D.B., and that the PWN to the Grandmother was both unnecessary and sufficient under the IDEA. Def.'s Cross-Mot. [12] at 16-24.

## **LEGAL STANDARD**

### I.   **Individuals with Disabilities Education Act: Requirements and Review**

Congress passed the Individuals with Disabilities Education Act and the Individuals with Disabilities Education Improvement Act to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and

related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).  To ensure that students with disabilities received a FAPE, each student receives an annual IEP tailored to their personal skills and needs that outlines the appropriate educational services they will receive. 20 U.S.C. § 1414(d)(1)(A); *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).  Relevant individuals collaborate as a team to design the IEP, including the child's parents, at least one regular education teacher, at least one special education teacher, a representative of the local education agency, the child, if appropriate, and any other individuals with special knowledge or expertise.  20 U.S.C. § 1414(d)(1)(B).  Under the IDEA, the school district must annually review and revise the student's IEP to ensure that the student is progressing.  20 U.S.C. § 1414(d)(4)(A).

If the parents disagree with their child's educational evaluation or placement, they may request an impartial administrative due process hearing before an impartial Hearing Officer.  20 U.S.C. § 1415(f)(1)(a).  If the parents remain dissatisfied with the outcome of the administrative hearing, they may appeal to the local education agency.  20 U.S.C. § 1415(g).  If still dissatisfied, they may challenge the HOD through a civil action in state or federal district court.  20 U.S.C. § 1415(i)(2).  While challenging the HOD, parents may unilaterally decide to send their child to a private school without the consent of local school officials, but they "do so at their own financial risk."  *Burlington,* 471 U.S. at 374; *see also Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter,* 510 U.S. 7, 15 (1993).  The reviewing court may grant tuition reimbursement if: "(1) the public placement violated the IDEA and (2) the private school placement was proper under the Act."  *Schoenbach v. D.C.*, 309 F. Supp. 2d 71, 77 (D.D.C. 2004) (internal quotation marks omitted); *see also Burlington*, 471 U.S. at 369-70.

### II.     Review of Hearing Officer Determination

The IDEA provides a statutory right to a civil action in state or federal court for "any party aggrieved by the findings and decisions" of an administrative hearing.  20 U.S.C. § 1415(i)(2)(A).  Under the IDEA, "the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. §1415(i)(2)(C).  The challenging party bears the burden of persuasion and must demonstrate by a preponderance of the evidence that the Hearing Officer erred.  *Reid ex rel Reid v. D.C.*, 401 F.3d 516, 521 (D.C. Cir. 2005).  While the court must independently

review the evidence presented, "it must also give 'due weight' to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993).  However, if a Hearing Officer's decision is "without reasoned and specific findings," it deserves little deference.  *Reid*, 401 F.3d at 521.  A court may not upset a hearing officer's determination without explaining its basis for doing so.  *Hawkins ex rel D.C. v. D.C.*, 539 F. Supp. 2d 108, 112 (D.D.C. 2008).

### III.     Motion for Summary Judgment Standard

Under Federal Rules of Civil Procedure 56, a grant of summary judgment is appropriate when the record shows no genuine issue of material fact and the moving party deserves judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  The moving party must inform the court of the foundation for its motion and identify segments of the record demonstrating an absence of genuine dispute of material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When ruling on a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party.  *McCready v. Nicholson*, 465 F.3d 1, 7 (D.C. Cir. 2006).

## DISCUSSION

### I.     The Hearing Officer correctly concluded that DCPS provided D.B. with a FAPE

The undersigned recommends upholding Hearing Officer Vaden's determination.  He correctly concluded that any procedural violations that may have occurred did not affect D.B.'s substantive rights, the PWN was proper, and D.B.'s placement at Spectrum could adequately implement his IEP.

#### a.  IEP Meeting Participation

Hearing Officer Vaden correctly ruled that DCPS' failure to ensure the Grandmother's participation in the July 28, 2011, IEP meeting was not a substantive violation amounting to a denial of FAPE.  Local educational agencies "must take all steps to ensure that one or both of the parents of a child with a disability are present at each IEP team meeting or are afforded the opportunity to participate." 34 C.F.R. § 300.322(a).  Agencies must notify parents of the impending meeting with sufficient time for the parents to make necessary arrangements to attend

the meeting and they must schedule the meeting at a mutually convenient time and place. *Id*. An IEP Team meeting may only be held without parents present if the public agency is unable to convince the parents to attend and if the agency kept a record of its attempts to arrange and agree on a mutually convenient time and place. 34 C.F.R. § 300.322(d). Acceptable records to document communication attempts include: "(1) Detailed records of telephone calls made or attempted and the results of those calls; (2) Copies of correspondence sent to the parents and any responses received; and (3) Detailed records of visits made to the parent's home or place of employment and the results of those visits." *Id*. Even if the school district procedurally violates the IDEA, this only results in a denial of FAPE if the procedural inadequacies in question "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). A student is denied a FAPE if procedural violations affect his or her substantive rights as well. *See Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990) (en banc)) ("[P]rocedural flaws do not automatically render an IEP legally defective. Before an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of education benefits.") (internal citations omitted).

   Although DCPS mailed the Grandmother a LOI through regular and certified mail, called her during two separate weeks, and visited her home in person, Hearing Officer Vaden found that DCPS committed procedural violations because DCPS "was not diligent in ensuring [the Grandmother] would attend" the IEP meeting and did not attempt to schedule the meeting at a mutually agreeable time and place.[4] HOD [9-1] at AR 15. Despite this procedural violation, Hearing Officer Vaden correctly concluded that DCPS did not substantively deny D.B. a FAPE. Hearing Officer Vaden considered the fact that the IEP Team chose to maintain the same level of services, which had proven successful in the past, highlighted the Grandmother's failure to claim that she would have advocated for different or additional services, and pointed out that the

---

[4] The undersigned disagrees with Hearing Officer Vaden and finds that communication via regular and certified mail, telephone, and in-person visit demonstrate a sufficient effort by DCPS to seek the Grandmother's attendance. However, the undersigned recommends affirming Hearing Officer Vaden ultimate conclusion that the Defendant's procedural violations did not amount to a denial of FAPE because he correctly concluded that D.B. did not experience a substantive IDEA violation.

Grandmother's presence could not have affected D.B.'s continued enrollment at D.B.'s former school because D.B.'s former school was set to close permanently. *Id.* at AR 16-17.

Given that the amount and quality of special education services did not change and the Grandmother and Mother failed to raise any substantive concerns about the IEP, the undersigned recommends affirming Hearing Officer Vaden's conclusion that DCPS offered D.B. a FAPE and did not substantively violate the IDEA. D.B.'s IEP was not changed at the July 28, 2011, IEP meeting in terms of the amount and type of services. Testimony of Nicole Garcia [10-1] at AR 684. The IEP team decided to maintain the level of services based on D.B.'s previous IEP, his educational progress according to RCA, classroom observation notes, attendance sheets, and prior multi-disciplinary team input. PWN [9-3] at AR 102. The only change made on July 28, 2011, was the school that would be providing the services because RCA was permanently closing. HOD [9-1] at AR 17. On August 18, 2011, the Grandmother and the Mother discussed their concerns about Spectrum with Ms. Garcia, specifically metro bus access and the school schedule. EasyIEP [9-3] at AR at 138. The Mother testified that she also expressed concern about the location of the classrooms and D.B.'s interaction with general education students. Testimony of Cordester Brown [10-1] at AR 439-40. Given that D.B.'s IEP did not change and the Grandmother and Mother did not raise concerns about the substance of the IEP itself, the undersigned recommends affirming the Hearing Officer's conclusion that DCPS offered D.B. a FAPE.

### b. Proper Prior Written Notice

DCPS issued proper PWN after the July 28, 2011, IEP Team meeting. The IDEA statutorily requires PWN as a procedural safeguards for parents "whenever the local educational agency…proposes to initiate or change; or…refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(3). PWN must include:

> (A) a description of the action proposed or refused by the agency;
> (B) an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> (C) a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained;

>(D) sources for parents to contact to obtain assistance in understanding the provisions of this subchapter;
>(E) a description of other options considered by the IEP Team and the reason why those options were rejected; and
>(F) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(1). The intent of PWN is to "provide sufficient information to protect the parents' rights under the Act. It should enable the parents to make an informed decision whether to challenge DCPS's determination and to prepare for meaningful participation in a due process hearing on their challenge." *Kroot v. D.C.*, 800 F. Supp. 976, 982 (D.D.C. 1992). The PWN is a general notification, giving parents basic information about DCPS' decision and the means of requesting more information and challenging the decision at a due process hearing. *Id*. This can be contrasted with the due process hearing at which DCPS must go into much greater detail and provide a comprehensive explanation of how it reached each of its conclusions. *Id*. When a PWN is required, it legally only needs to contain a general statement of the decisions made, the information relied upon during the decision making process, and the avenues available to the parents to request more information about or challenge the decision. *Id*.

Hearing Officer Vaden correctly found that the PWN in this case was proper. A PWN was required because DCPS transferred D.B. from his original school, RCA, to Spectrum. Especially considering her absence at the July 28, 2011, IEP Team meeting, the Grandmother needed prior notice of this change prior to the beginning of the school year on August 22, 2011. The July 28, 2011, PWN informed the Grandmother of the school change, adding that Spectrum would be able to implement D.B.'s IEP and provide him with a FAPE. PWN [9-3] at AR 102. The PWN explained that the placement decision was made based on D.B.'s prior IEP, evaluations, classroom observations, progress reports, and D.B's attendance. *Id*. Additionally, the PWN listed other options for placements for D.B. that were considered and rejected, including a general education setting and a combination general/special education setting. *Id.* at 103. The PWN also informed the Grandmother of her procedural rights under the IDEA and provided contact information for Nicole Garcia, directing her to contact Ms. Garcia with any questions about the PWN. *Id*. Accordingly, the PWN met the requirements established by 20 U.S.C. § 1415(c)(1) and the undersigned recommends upholding Hearing Officer Vaden's conclusion that the PWN was proper.

### c. DCPS provided D.B. with an appropriate placement

Hearing Officer Vaden correctly ruled that Spectrum was an appropriate placement for D.B. The Plaintiffs argued that D.B.'s transfer from RCA to Spectrum was inappropriate for D.B.'s unique needs, emphasizing that Spectrum provided more interaction with non-disabled peers than appropriate for D.B., offered a leveled behavioral policy that aimed to ultimately incorporate special education students into a general education setting, placed students in a single classroom all day each day of the school year, and overemphasized computer-based learning. Pls.' Mot. [11] at 12. Under the IDEA, DCPS is obligated to devise IEPs for each child with disabilities, "mapping out specific educational goals and requirements in light of the child's disabilities and matching the child with a school capable of fulfilling those needs." *See Jenkins v. Squillacote*, 935 F.2d 303, 304-305 (D.C. Cir. 1991). The appropriateness of the location of services depends upon "the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services offered by the school, the placement's cost, and the extent to which the placement represents the least restrictive environment." *See N.G. v. D.C.*, 556 F. Supp. 2d 11, 37 (D.D.C. 2008) (citing *Branham v. D.C.*, 427 F.3d 7, 12 (D.C. Cir. 2005)). Hearing Officer Vaden correctly ruled that, according to these guidelines, Spectrum was an appropriate school to implement D.B.'s placement.

Hearing Officer Vaden was correct in concluding that Spectrum was able to implement D.B.'s IEP. D.B.'s July 28, 2011, IEP required D.B. to be in a full-time special education placement outside of general education. IEP [9-3] at AR 109. The IEP was to provide 25.5 hours per week of specialized instruction, 1 hour per week of behavioral support services, and 1 hour per week of speech and language services, with all services to be provided outside the general education setting. *Id.* at AR 110. The IEP included goals in mathematics, reading, written expression, speech and language, and emotional, social and behavioral development. *Id.* at AR 106-108. The IEP also included transportation services for D.B. *Id.* at AR 111. D.B. testified that he shared a classroom at Spectrum with five other students and four teachers. Testimony of D.B [10-1] at AR 488-89. Chithalina Khanchalern, D.B.'s Educational Advocate, also testified that D.B.'s class at Spectrum consisted of four teachers, including one who was certified in special education and one who was a behavioral specialist. Testimony of Chithalina Khanchalern [10-1] at AR 524-25. According to Ms. Garcia, in her new role as DCPS' Co-

Location Classroom Coordinator, D.B.'s classroom at Spectrum included a certified teacher, an instructional aide and a behavioral staff member. Testimony of Nicole Garcia [10-1] at AR 679. Ms. Garcia added that a social worker was available at Spectrum, that D.B. could receive his speech and language services at Spectrum, and that D.B. would have received direct instruction from a teacher in addition to participating in a computer-based learning program. *Id.* at 681, 664-65. Ms. Garcia delivered uncontested testimony that Spectrum was fully able to implement D.B.'s IEP. Def.'s Cross-Mot. [12] at 22. Lastly, while the Plaintiffs also expressed concern about Spectrum's use of computers as educational tools, several evaluators recommended that D.B. use computers in his education. *See* Clinical Psychological Exam [9-1] at AR 48 (D.B. should use "a variety of computer and video games" in order to "improve attention and concentration"); Education Evaluation Report [9-2] at AR 65 (D.B.'s "ability in the basic skills will likely improve best with the introduction of and training with computerized specialized remedial software and word-processing equipment.") Based on this evidence, Hearing Officer Vaden correctly determined that Spectrum was able to implement D.B.'s IEP.

## II. Given that DCPS did not deny a FAPE to D.B., the Plaintiff is not entitled to tuition reimbursement.

D.B. and his Grandmother have failed to satisfy the threshold question that DCPS denied D.B. a FAPE, therefore the undersigned finds that they are not entitled to tuition reimbursement. Statutorily, local education agencies are not required to fund a private school placement if the agency "made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. 1412 (a)(10)(C)(i). Under the IDEA, "[p]arents who unilaterally decide to place their disabled child in a private school without the consent of local authorities…do so at their own risk." *Anderson v. D.C.*, 606 F. Supp. 2d 86, 90 (D.D.C. 2009), citing *Carter*, 510 U.S. at 15 (internal quotations omitted). The Supreme Court has found that "[i]f the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement." *Burlington*, 471 U.S. at 374. While the statute provides funding for private schooling in limited circumstances where a FAPE is denied, this is intentionally narrow because "[i]f parents could be reimbursed for placement at a private school of their choice, they would have every incentive to proceeding without agency approval and later seek retroactive relief." *Fagan v. D.C.*, 817 F. Supp. 161, 166 (D.D.C. 1993). Even if a FAPE was denied, parents may be denied

reimbursement if they fail to inform the public agency of their intent to enroll their child in a private school at the public expense or "upon a judicial finding of unreasonableness with respect to actions taken by the parents." *See Schoenbach*, 309 F. Supp. 2d at 84-85 (citing 20 U.S.C. § 1412(a)(10)(C)(iii)(III)); 34 C.F.R. § 300.148(d). Reimbursement may be reduced or denied if, at least ten business days prior to the removal of the child from the public school, the parents did not give written notice to the public agency that they were rejecting the placement proposed by the agency, including stating their concerns and their intent to enroll their child in a private school at public expense. 34 C.F.R. § 300.148(d).

Given that DCPS provided D.B. with an adequate IEP, provided PWN, and provided him an appropriate placement, the undersigned finds that D.B. and his Grandmother are not entitled to tuition reimbursement. Also, as Hearing Officer Vaden correctly noted, even if DCPS had denied D.B. a FAPE, the Plaintiff is not entitled to reimbursement because D.B.'s Mother was unjustified in unilaterally removing her son from Spectrum and placing him in New Beginnings and the Grandmother did not notify DCPS of his withdrawal within the required time frame. Therefore, the undersigned recommends that Plaintiff be denied tuition reimbursement.

## RECOMMENDATION

The undersigned recommends upholding the Hearing Officer's Determination. While DCPS may have procedurally violated the IDEA with its notice of the IEP meeting to the Grandmother, it did not substantively violate the IDEA. Additionally, the PWN issued by DCPS before the 2011-2012 school year began was adequate and Spectrum was an appropriate placement for D.B. that could implement his IEP. Accordingly, the Plaintiffs are not entitled to reimbursement. The undersigned recommends that the Plaintiffs' Motion for Summary Judgment be denied and DCPS's Motion for Summary Judgment be granted.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made,

and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

DATE: __8/14/2013_____                  _____/s/_____
                                          ALAN KAY
                                          UNITED STATES MAGISTRATE JUDGE